## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

CANDICE A. Z.,

                Plaintiff,

   v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

                Defendant.

Case No. 19 C 8174

Magistrate Judge Sunil R. Harjani

## MEMORANDUM OPINION AND ORDER

Plaintiff Candice A. Z. appeals the Commissioner's decision denying her application for disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, the Court affirms the Commissioner's decision.

## BACKGROUND

Candice was diagnosed with Addison's disease (adrenal insufficiency) in August 2005. In December 2015, Candice filed for DIB, alleging disability beginning December 15, 2007 due to Addison's disease, hypothyroidism, osteoporosis, migraines, and a back injury. In her appeal, Candice reported anxiety and increased difficulties related to Addison's disease and hypothyroidism. Candice completed one year of college and previously worked as a school secretary and teacher's aide. The last date on which she was insured was December 31, 2011.

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted for Andrew M. Saul as Defendant in this action. *See* Fed. R. Civ. P. 25(d)(1). Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is therefore substituted for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

On October 23, 2018, the ALJ issued an unfavorable decision denying Candice's claim for DIB. (R. at 16-23). In his written decision, the ALJ relied on the standard five-step analysis. At step one, the ALJ determined that Candice did not engage in substantial gainful activity between December 15, 2007, her alleged onset date, through December 31, 2011, her date last insured. *Id*. at 18. At step two, the ALJ found that Candice has the severe impairment of Addison's disease. *Id*. At step three, the ALJ determined that Candice's impairments do not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 18-19. The listed impairments the ALJ considered were 5.06 (inflammatory bowel disease), 9.00 (endocrine disorders), 12.06 (anxiety), and 14.06 (undifferentiated and mixed connective tissue disease. *Id*. at 19. The ALJ determined that Candice's anxiety caused no more than minimal limitations in understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, or with adapting or managing oneself. *Id*.

The ALJ then concluded that Candice retains the residual functional capacity ("RFC") to perform light work in that she can lift and/or carry up to twenty pounds occasionally and ten pounds frequently and has no limitations in her ability to sit, stand or walk throughout an eight-hour day, except she can never balance or climb ladders, ropes or scaffolds and is limited to working in non-hazardous environments (i.e., no driving at work, operating moving machinery, working at unprotected heights or around exposed flames and unguarded large bodies of water, and should avoid concentrated exposure to unguarded hazardous machinery). (R. 19-22). Based on this RFC, the ALJ found at step four that Candice is able to perform her past relevant work as a school secretary and teacher's aide. *Id*. at 22-23. As a result of this determination, the ALJ did not reach step five and denied Candice's application for DIB. *Id*. at 23. The Appeals Council

2

denied her request for review, leaving the ALJ's decision as the final decision of the Commissioner. *Id*. at 1-6; *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2017).

## DISCUSSION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform her former occupation; and (5) whether the claimant is unable to perform any other available work in light of her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (internal quotes omitted). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotes omitted).

Candice challenges the ALJ's decision on several grounds, arguing that the ALJ erred in: (1) discounting the opinion of her treating physician, Stephanie Wang; (2) assessing her mental RFC; (3) analyzing her physical RFC; and (4) evaluating her testimony regarding her subjective symptoms. The Court finds that the ALJ's decision is supported by substantial evidence.

## A. Treating Physician Opinion

Candice first argues that the ALJ improperly rejected the April 2016 opinion of her treating internist, Dr. Stephanie Wang. The opinion of a treating source is entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2) (governing claims filed before March 27, 2017). An ALJ must "offer good reasons for giving a treating physician's opinion less than controlling weight." *Fair v. Saul*, 2021 WL 1711810, at *3 (7th Cir. 2021) (internal quotes omitted).

Dr. Wang had treated Candice since December 9, 2005 and opined on April 13, 2016 that Candice has: (1) moderate limitations in her abilities to understand and remember short, simple instructions; carry out short, simple instructions; understand and remember detailed instructions; make judgments on simple work-related decisions; respond appropriately to work pressures and changes in a usual work setting and (2) "multiple competing symptoms related to her Addison [disease] which prevent her from consistently working." (R. 633, 634, 639). The ALJ gave Dr. Wang's opinion from April 2016 "little to no weight." *Id*. at 22.[2]

Candice argues that the ALJ erred in evaluating Dr. Wang's opinion because: (1) the ALJ's finding that the signature on the mental RFC form was illegible was based on a mistake of fact;

---

[2]     The ALJ also gave "little weight" to Dr. Wang's February 2007 letter "suggesting that [Candice] could not maintain consistent employment due to Addison's disease and migraine headaches, which she stated [Candice] was having about four to five times per month." (R. 22; 1171). Candice does not challenge this aspect of the decision.

(2) the ALJ did not explain the significance of the June 20, 2007 treatment note he cited; and (3) the ALJ did not discuss the evidence from the relevant period (*i.e.*, from December 15, 2007 through December 31, 2011).

The Court finds no error with the ALJ's assessment of Dr. Wang's opinion. Candice faults the ALJ for diminishing Dr. Wang's opinion on the basis that the "signature on the mental residual functional capacity form [is] illegible." (R. 22). Candice claims that the ALJ should have obtained clarification from Dr. Wang and/or Candice or her attorney at the hearing if the ALJ questioned whether Dr. Wang wrote the opinion. Although the ALJ noted that the signature on mental RFC form was illegible, the ALJ considered the opinion in making his decision. He recognized that the April 13, 2016 forms were from a "treating source" and provided sufficient reasons for discounting the opinion. *Id.* Moreover, the physical RFC form completed on the same day and provided as part of the same exhibit contains the name "Stephanie Wang" in printed form below the signature line. Under these circumstances, the ALJ had no obligation to develop the record further.

Candice next criticizes the ALJ's reliance on evidence from prior to her alleged December 2007 onset date to discount Dr. Wang's opinion with respect to her mental condition. Candice claims that the "ALJ did not explain the significance of evidence from prior to the alleged onset date on the severity [of] [Candice's] anxiety during the alleged period of disability." Doc. 13 at 4. Contrary to Candice's argument, the ALJ explained that "evidence from prior to the alleged period at issue shows that [Candice's] anxiety was well controlled with medication." (R. 22). Candice argues that this is an inadequate explanation because her condition in 2006, the year before her alleged onset date, has no bearing on her condition as of her December 2007 alleged onset date. The Court disagrees because pre-onset evidence "is part of the relevant inquiry, along with the evidence after the alleged onset date." *Robert M. W. v. Saul*, 2020 WL 6801842, at *5 (N.D. Ill.

Nov. 19, 2020). The ALJ is required to "consider all evidence in [the] case record when [he] make[s] a determination or decision whether [the claimant is] disabled," including evidence that predates a claimant's alleged onset date. 20 C.F.R. § 404.1520(a)(3); *see also Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); *Johnson v. Sullivan*, 915 F.2d 1575, at *3 (7th Cir. 1990) ("the ALJ should consider the record as a whole, including pre-onset evidence . . . and post-onset evidence.").

Specifically, the ALJ cited a January 2006 treatment note from Dr. Wang indicating that Candice's anxiety was "much better on Paxil" and her "affect brighter." (R. 22, 1117). The ALJ also cited to Candice's next appointment in June 2006 at which Dr. Wang noted that Candice's anxiety was "stable" and "well controlled" and directed Candice to continue Paxil 25 mg daily. *Id.* at 22, 1120. The ALJ reasonably concluded that it was inconsistent for Dr. Wang's own notes to characterize Candice's anxiety as "stable" and "well controlled" on medication while opining that she was moderately limited in her abilities to understand, remember, and carry out instructions and respond appropriately to work pressures and changes. This inconsistency permits the ALJ to discount Dr. Wang's opinion. *Burmester v. Berryhill*, 920 F.3d 507, 512-13 (7th Cir. 2019). Significantly, Candice does not point to any record evidence demonstrating that her mental condition worsened after the alleged December 2007 onset date. Given that there is no indication that Candice's mental condition deteriorated after the date of these records and the record reflects that Candice remained on Paxil during the relevant period, whether Candice's anxiety was adequately controlled by medication in the past suggests that Candice would be expected to respond to the same medication after the alleged onset date. (R. 486, 490, 493); *Robert M. W.*, 2020 WL 6801842, at *5; *Pirtle v. Astrue*, 479 F.3d 931, 934 (8th Cir. 2007) ("the ALJ may consider all evidence of record, including medical records and opinions dated prior the alleged onset date, when there is no evidence of deterioration or progression of symptoms."). Moreover,

an "ALJ may rely on medical evidence that the condition is treated and controlled by medication." *Truelove v. Berryhill*, 753 F. App'x 393, 397 (7th Cir. 2018). This is because "conditions that can be controlled with medication are not disabling." *Brown v. Saul*, 799 F. App'x 915, 919 (7th Cir. 2020); *Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006) (ALJ did not improperly discredit treating physician's diagnosis of depression and panic attacks where treating physician reported that claimant's depression and panic attacks were stable and controlled on Paxil).

The ALJ's second reason for discounting Dr. Wang's mental RFC opinion—that "there is very little evidence in the record to show treatment for anxiety during the period at issue"—is a good reason supported by substantial evidence. Candice argues that the ALJ failed to discuss two pieces of evidence supportive of her clam, namely that she was prescribed anxiety medication during the period at issue and her testimony about how stress impacts her ability to interact with others. It is well settled that "an ALJ's adequate discussion of the issues need not contain a complete written evaluation of every piece of evidence." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (internal quotes and citation omitted). This means "an ALJ doesn't need to address every piece of evidence, but he or she can't ignore a line of evidence supporting a finding of disability." *Id*.

Here, the ALJ did not ignore an entire line of evidence that supported a disability finding. Rather, the ALJ adequately discussed and rejected Candice's suggestion that her anxiety prevents her from performing full-time light work. Again the ALJ explicitly considered that "[e]vidence from prior the period at issue shows that [her] anxiety was well controlled with medication and there is very little evidence in the record to show treatment for anxiety during the period at issue." (R. 22). Candice does not dispute the ALJ's finding that there is very little evidence of treatment for anxiety during the relevant period, but instead faults the ALJ for failing to explicitly discuss

the scant evidence from the relevant period and explain whether it was consistent with Dr. Wang's opinion. First, Candice says that the ALJ did not discuss that she was prescribed medication for anxiety, including Paxil, Lorazepam, and Elavil, during the relevant period. But the ALJ cited the exact same three pages of the record that Candice contends were not sufficiently addressed, showing that he considered evidence of Candice's continued use of anxiety medication. Doc. 13 at 4 (citing R. 486, 490, 493); R. 20 (citing 6F/3-7); *id*. at 21 (citing 6F/3-7, 6F/8-11). Moreover, prescriptions do not prove functional limitations. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (rejecting claimant's claim that use of antidepressant established the extent of her depression and finding that taking Lexapro for depression "would not warrant inclusion in her RFC if the prescription controlled her depression, as the evidence suggested.").

Second, Candice argues the ALJ erred in failing to explicitly discuss her testimony about her ability to interact with others. Regarding social interactions, Candice testified that both "good" stress, such as a party or social gathering, and "bad" stress trigger her anxiety, which "snowballs and triggers [her] Addison's disease, and [she] end[s] up not going or not feeling well and having to stay home." (R. 53). This testimony confirms Candice's anxiety condition, which the ALJ recognized, but it does not establish that it limits her mental abilities in ways that would prevent her from performing her past relevant work. Further, Candice does not explain how this testimony is consistent with Dr. Wang's opinion regarding her ability to interact with others. Dr. Wang actually opined that Candice has *no work-related restrictions* in interacting with the public, supervisors, or co-workers. *Id*. at 634. Nor does Candice explain how the omission of this testimony undermines the ALJ's overall conclusion that there is very little evidence of treatment for anxiety during the period at issue. The Court finds no reversible error based on the ALJ's failure to expressly discuss this testimony.

The ALJ also provided good reasons for discrediting Dr. Wang's opinion regarding Candice's physical limitations. Dr. Wang opined that "multiple competing symptoms related to [Candice's] Addison [disease] . .. prevent her from consistently working." (R. 639). The ALJ gave this opinion of Dr. Wang little to no weight because Candice worked after her 2005 Addison's diagnosis and the record does not show worsening symptoms or deterioration of her condition around the alleged December 2007 onset date or during the period at issue. *Id*. at 22. Candice submits that the "ALJ was required to explain how working past the diagnosis of an impairment was inconsistent with Dr. Wang's opinion." Doc. 13 at 5. Candice claims that she did not work after her impairments became disabling, and thus, Dr. Wang's opinion should be valid for the alleged period of disability beginning December 15, 2007. Contrary to Candice's argument, however, the ALJ did not reject Dr. Wang's opinion that she could not consistently work simply because she worked after her 2005 Addison's diagnosis. Dr. Wang specifically opined that Candice's limitations and inability to consistently work were "first present" "since [her] diagnosis of Addison's in 2005." (R. 647). Thus, the ALJ correctly noted that Dr. Wang's opinion that symptoms from Candice's Addison's disease prevented her from consistently working since her diagnosis in 2005 was not consistent with her having worked until December 15, 2006. *Id*. at 229. And an ALJ may properly discredit a treating physician's opinion if it is inconsistent with other evidence in the record. *Peters v. Saul*, 975 F.3d 639, 642 (7th Cir. 2020).

The ALJ's second basis for discounting Dr. Wang's physical RFC opinion—that the record does not show worsening symptoms or deterioration of her condition around the alleged December 2007 onset date or during the period at issue—finds adequate support in the record. Candice argues that the ALJ's finding is based on a mistake of fact because other parts of the record support that her symptoms prevented her from maintaining a regular work schedule. While Candice claims her

"medical deterioration" was documented, she cites only examples of her own subjective statements without support from objective medical evidence. Candice cites to her own testimony that she is unable to work because she is "unreliable [and] undependable," but the ALJ reasonably discounted her allegation of disabling symptoms, as explained in more detail below. Doc 13 at 13; R. 49. Candice also claims she had a "doctor's note for and submitted a FMLA application to her employer." Doc. 13 at 6 (citing R. 43, 250). But the FMLA form she referenced does not appear in the record, so the basis for the FMLA application is unknown. Without more, the mere existence of a FMLA request does not support Dr. Wang's conclusion that Candice was unable to work consistently. *Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018) ("It was [plaintiff's] burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work."). Because Candice has not pointed to evidence in which it was documented that her physical condition deteriorated after her alleged onset date, the ALJ did not err by declining to credit Dr. Wang's opinion that she could not consistently work due to the symptoms of her Addison's disease.

Candice also contends that the ALJ improperly failed to discuss the frequency of examination or the length, nature, and extent of Dr. Wang's treatment relationship with her before rejecting Dr. Wang's opinions. The Commissioner responds that "an ALJ need not discuss each regulatory factor in weighing a medical opinion." Doc. 21 at 8-9. "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). "As a general rule, an ALJ should explicitly consider the details of the treatment relationship and provide reasons for the weight

given to [treating physicians'] opinions." *Karr v. Saul*, 989 F.3d 508, 512 (7th Cir. 2021) (internal quotes omitted). Ultimately, the ALJ must "sufficiently account[] for the factors in 20 C.F.R. § 404.1527" and "buil[d] an accurate and logical bridge between the evidence and his conclusion." *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013) (internal quotes omitted).

The ALJ explicitly identified Dr. Wang as a "treating source" and addressed the supportability and consistency of Dr. Wang's opinion. As described above, Dr. Wang's mental RFC opinion was inconsistent with evidence prior to the period at issue showing that Candice's anxiety was well controlled with medication and the lack of significant evidence showing treatment for anxiety during the relevant period. Moreover, the ALJ clearly considered the consistency of Dr. Wang's physical RFC opinion. The ALJ noted Dr. Wang's physical RFC opinion concerning the date Candice's restrictions began was inconsistent with Candice's ability to work for more than a year afterwards and the lack of evidence supporting worsening symptoms of her Addison's condition after her alleged December 2007 onset date.

The ALJ's failure to expressly discuss the other factors is harmless because the ALJ's decision demonstrates awareness of many of the relevant factors, which is sufficient. *Schreiber*, 519 F. App'x at 959 (while the ALJ "did not explicitly weigh each factor in discussing" the treating physician's opinion, "his decision makes clear that he was aware of and considered many of the factors, including" treatment relationship, consistency with the record as a whole, and supportability); *Henke v. Astrue*, 498 F. App'x 636, 640 n.3 (7th Cir. 2012) ("The ALJ did not explicitly weigh every factor while discussing her decision to reject Dr. Preciado's reports, but she did note the lack of medical evidence supporting Dr. Preciado's opinion, and its inconsistency with the rest of the record. This is enough."). Here, the ALJ discussed the treatment Dr. Wang provided. The ALJ's citation to many of Dr. Wang's treatment records which spanned several

years shows that he recognized and considered the frequency of examination and the length, nature and extent of the treatment relationship Candice had with Dr. Wang. *Paul D. v. Saul*, 2021 WL 76816, at *3 (N.D. Ill. Jan. 8, 2021). For example, the ALJ cited Dr. Wang's first treatment record on December 9, 2005, which notes that Candice was a new patient and diagnosed with Addison's disease in 2005. R. 20 (citing R. 1113-20F/197). The ALJ cited Dr. Wang's progress notes from June 20, 2006, November 7, 2006, and December 1, 2006 and noted that Candice's Addison disease was generally stable and asymptomatic prior to her alleged December 2007 onset date and also that she worked after her 2005 Addison's diagnosis. *Id*. at 21 (citing 20F/204, 207-08, 213). The ALJ cited Dr. Wang's July 27, 2009 progress notes, among other medical records, and noted that the record does not show ongoing or consistent complaints of diarrhea and constipation during the relevant period. *Id*. (citing 20F/225-26). The ALJ also discussed Dr. Wang's February 14, 2007 letter which stated Candice could not maintain consistent employment due to Addison's disease and migraine headaches. *Id*. (citing 20F/255). The ALJ pointed out that Dr. Wang's treatment records from December 1, 2006, July 6, 2007, and February 14, 2007 failed to support the severity described in Dr. Wang's letter. *Id*. (citing 20F/211-215).

This record provides confidence that the ALJ was clearly aware of and considered many of the (c)(2) factors and built a logical bridge between the evidence and his conclusions regarding the weight he gave Dr. Wang's opinions. Any error in articulation was harmless because a more explicit analysis of each of the regulatory factors would not have changed the result here. *Karr*, 989 F.3d at 513 (harmless error analysis applies in the context of ALJ's failure to explicitly mention treating physician regulatory factors); *Retzloff v. Colvin*, 673 F. App'x 561, 567 (7th Cir. 2016) (finding that an ALJ's failure to explicitly list the factors in § 404.1527(c) was "harmless,

as the ALJ did discuss the relevant points, even if not by name"). For these reasons, the ALJ's assessment of Dr. Wang's opinion is supported by substantial evidence.

**B.    Mental RFC**

Candice next argues that the ALJ erred in assessing her mental RFC because the ALJ failed to assess the four areas of mental functioning outlined by the "special technique." 20 C.F.R. § 404.1520a(e)(4) (the "decision must include a specific finding as to the degree of limitation in each of the functional areas."). She points out that the regulations require the ALJ to discuss the "significant history, including examination and laboratory findings, and functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." *Id*. Candice claims that because the ALJ did not assess the four areas of functioning during the special technique analysis, the mental RFC lacks substantial support in the record.

The "special technique is used to evaluate mental impairments at steps two and three of the five-step evaluation" and to "analyze whether a claimant has a medically determinable mental impairment and whether that impairment causes functional limitations." *Craft v. Astrue,* 539 F.3d 668, 674 (7th Cir. 2008). If a claimant has a medically determinable mental impairment, the ALJ must rate the degree of functional limitation in the four areas known as the paragraph B criteria. *Id*. Contrary to Candice's claim, the ALJ rated the degree of limitation in each of the four paragraph B functional areas. The ALJ considered Candice's anxiety and after considering the four "paragraph B" criteria of Listing 12.06, specifically found no "more than minimal limitations in understanding, remembering or applying information, interacting with others, concentrating, persisting or maintaining pace, or with adapting or managing oneself." (R. 19). At step two, the ALJ had found that Candice suffered from only one severe impairment: Addison's disease. (R. 18). Thus, as Candice notes, these findings imply that the ALJ determined that Candice's anxiety was a medically determinable mental impairment but not a severe impairment at step two. Doc.

13 at 7; *see* 20 C.F.R. § 404.1522. The ALJ did not give a detailed assessment of Candice's anxiety in his step three analysis. But elsewhere, in the context of the RFC finding, the ALJ provided a sufficient discussion of relevant medical evidence shortly prior to the period at issue, including Candice's good response to medication, and noted the limited evidence of treatment for anxiety during the period at issue. (R. 22). The ALJ did not need to repeat this analysis in the portion of the decision discussing the four paragraph B criteria. *Jenske v. Saul*, 955 F.3d 583, 589-90 (7th Cir. 2020); *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004).

As part of his RFC analysis, the ALJ addressed Candice's non-severe anxiety and the no more than minimal mental limitations assessed at step three. The ALJ noted that Candice testified that she suffered from brain fog and memory issues. (R. 20). But after weighing the evidence, the ALJ wrote that the record did not show that Candice's anxiety caused more than minimal restrictions on Candice's ability to perform work related activities during the period at issue because "evidence from prior to the period at issue shows that the claimant's anxiety was well controlled with medication" and "there is very little evidence in the record to show treatment for anxiety during the period at issue." *Id*. at 22. Those specific reasons and the contrary evidence cited by the ALJ provide adequate support for the ALJ's decision not to include non-exertional limitations in the RFC and the Court can follow the basis of the ALJ's reasoning. *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) ("The court's role is not to reweigh evidence, but to determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion.").

Again, the ALJ cited to Dr. Wang's treatment note on January 17, 2006 stating that Candice was "much better on Paxil, presently on 25 mg daily" and her "affect [was] brighter." *Id*. at 22 (citing Ex. 20F/201). The ALJ also cited Dr. Wang's June 20, 2006 treatment note showing that Candice's anxiety was "stable" and "well-controlled." *Id*. (citing Ex. 20F/204). Additionally, the

ALJ cited a medical record in September 2007 that stated Candice's Addison's disease was "stable," which diminishes her claim that recurrent symptoms of Addison's disease aggravated her anxiety. *Id*. (citing Ex. 8F/3). There is an instance of Candice reporting that her anxiety symptoms had worsened in November 2006. (R. 1123). However, Dr. Wang noted that Candice was only taking 12.5 mg of Paxil, not the 25 mg of Paxil as previously instructed. *Id*. at 1117, 1120, 1123. And by February 14, 2007, Candice denied decreased mood and reported sleeping well. *Id*. at 1131. Dr. Wang again noted Candice's depression was stable and directed her to continue Paxil. *Id*. at 1133. Based on this record, the ALJ reasonably did not include any limitations arising for anxiety in the RFC. Candice does not cite to any treatment evidence during the period at issue that the ALJ ignored or which contradicts the ALJ's conclusion that there is "very little evidence" showing treatment for anxiety during the period at issue.[3]

It is true, as Candice points out, that even mild limitations in mental functioning could impact the ability to perform skilled work and an ALJ is required to evaluate the effect of any mild limitations on the RFC. Doc. 22 at 6. Candice is also correct that mild limitations are not the same as no limitations. *Rick M. v. Saul*, 2021 WL 2588762, at *5 (N.D. Ill. June 24, 2021) ("at step two the ALJ found mild mental limitations, and mild is not none."). However, "there is no one-to-one relationship between impairment findings made a step two and the functional limitations

---

[3] Puzzlingly and without citing any evidence, Candice argues that it "is not inconsistent for an individual to have debilitating anxiety while working and also have stable and well controlled anxiety while not working." Doc. 22 at 7. She claims that the fact that her "anxiety was stable and well controlled while she was not working does not support a finding that she did not have anxiety would limit her ability to work." Doc. 22 at 7-8. This argument misconstrues the ALJ's decision and the record. The ALJ did not find, and the record does not reflect, that Candice's anxiety was debilitating while she worked. The ALJ stated that Candice's "anxiety was well controlled with medication" prior to her alleged December 2007 onset date, and as explained, the record fully supports this statement. (R. 22, 1117-18, 1120). Candice's argument overlooks the fact that she worked until December 15, 2006. *Id*. at 229. So contrary to Candice's suggestion, the evidence the ALJ cited shows that her anxiety was stable and well controlled *while she was working*.

determined in an RFC." *Id*. In other words, a "finding of impairment at step two will not necessarily equate to any RFC limitation." *Id*. The ALJ is required to consider limitations imposed by non-severe impairments at the RFC stage, but "not necessarily include them in his finding of plaintiff's RFC." *Rick M.*, 2021 WL 2588762, at *5; *Charles M. v. Saul*, 2020 WL 231080, at *7 (N.D. Ill. Jan. 15, 2020). By discussing the evidence related to Candice's mental health history and concluding that her limitations were not as severe as Candice alleged, the ALJ adequately considered her only minimal mental restrictions but determined that they did not support a functional limitation in the RFC. This is not a case where the ALJ ignored mental functional limits found at step two or three during the RFC assessment. In the end, Candice bears the burden of proving that she is disabled, and she failed to carry that burden by not identifying any objective evidence supporting Dr. Wang's mental RFC opinion. *Ray v. Saul*, 2021 WL 2710377, at *3 (7th Cir. June 30, 2021) (claimant failed to prove that he was disabled because "[m]uch of his case stands on [his treating physician's] medical opinion, and he did little to supplement that opinion with other evidence.").

## C. Physical RFC

Candice contends that the ALJ's physical RFC finding was not supported by substantial evidence. She asserts that an evidentiary deficit was created that the ALJ improperly filled "with his lay opinion" because: (1) the ALJ's physical RFC "significantly differed" from the state agency consultant's opinion, (2) the ALJ afforded little to no weight to Dr. Wang's opinion, and (3) the ALJ found the medical evidence not supportive of Candice's testimony. Doc. 13 at 9-11. The ALJ is required to "sufficiently articulate his assessment of the evidence to assure [the Court] that [he] considered the important evidence and to enable [the Court] to trace the path of the ALJ's reasoning." *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996) (internal quotes omitted).

The Court rejects Candice's argument than an evidentiary deficit existed when the ALJ found Candice more limited than the state agency physician and that the ALJ improperly crafted an RFC based on his own lay opinion. It was not error for the ALJ to assess an RFC consistent with but more restrictive than a state agency physician. The ALJ was not required to accept all of Dr. Mendonca's functional limitations in determining Candice's RFC. *Whitehead v. Saul*, 841 F. App'x 976, 982-83 (7th Cir. 2020) ("the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians.") Here, the ALJ appropriately weighed the evidence and adequately explained his decision to credit some of Candice's testimony in constructing the RFC. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (ALJ's RFC finding "was more limiting than that of any state agency doctor or psychologist, illustrating reasoned consideration given to the evidence [claimant] presented.").

The ALJ found that Candice retained the ability to perform light work with certain postural and environmental limitations. In reaching this conclusion, the ALJ reviewed the medical evidence from Candice's treating physicians as well as the opinion evidence from the state agency physician on reconsideration and Dr. Wang and Candice's subjective allegations. The ALJ's assessment of Candice's physical RFC is supported by substantial evidence. At step two, the ALJ found Candice's Addison's disease to be a severe impairment. (R. 18). At step three, the ALJ considered Candice's argument that she met listings for inflammatory bowel disease, endocrine disorders, and undifferentiated autoimmune disorder but determined that they did not meet or equal a listing. *Id*. at 19. In assessing Candice's RFC, the ALJ further discussed the medical evidence relating to her impairments. *Id*. at 20-22. The ALJ found that the medical record showed that her Addison's disease was generally stable and asymptomatic prior to the alleged December 2007 onset date and she worked after her 2005 Addison's diagnosis despite Dr. Wang's statement

otherwise. *Id*. at 20-21. Although Candice testified about diarrhea and constipation and received a likely diagnosis of irritable bowel syndrome after her date last insured, the ALJ noted that the record did not show ongoing or consistent complaints related to diarrhea and constipation during the relevant period. *Id*. at 21. In addition to the medical evidence, the ALJ considered the opinion of the state agency consultant, Rohini Mendonca, on reconsideration in July 2016 that Candice could perform the full range of medium work. *Id*. at 21. The ALJ gave the state agency physician's opinion "some weight," finding that Candice "was more limited after considering the totality of the evidence at the hearing level including hearing testimony." *Id*.

Contrary to Candice's contention, the ALJ's physical RFC did not "significantly differ" from Dr. Mendonca's opinion. In fact, Dr. Mendonca's physical RFC opinion and the ALJ's RFC are substantially consistent and where they are not identical, the ALJ's RFC is more restrictive. The ALJ credited Candice's allegation of reduced energy and fatigue and found her more limited than Dr. Mendonca. The ALJ explained that he "considered the allegations regarding reduced energy and fatigue in finding that [Candice] was limited to a range of light work." *Id*. Candice claims that the ALJ erred by failing to explain why her fatigue did not affect her ability to sit but prevented her from standing, walking, lifting, and carrying as much as the state agency physician opined. As an initial matter, by limiting Candice to light work, the ALJ *did not* determine that Candice's reduce energy and fatigue supported standing and walking limitations. The "standing, walking, and sitting requirements are the same for light or medium level work." *Langenhuizen v. Saul*, 2021 WL 1208869, at *5 (E.D. Wisc. March 31, 2021); SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983) (a full range of medium work and light work "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."). The "main difference between light and medium work is the amount of weight that a person can lift." *Langenhuizen*, 2021 WL

1208869, at *4; 20 C.F.R. §§ 404.1567(b), (c) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "Medium work involving lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weight up to 25 pounds."). Relying on Candice's and her husband's testimony that she had difficulty lifting and carrying objects, the ALJ reasonably limited her to the demands of light work. (R. 52, 55). The ALJ thus sufficiently explained how the RFC accommodates Candice's lifting and carrying limitations related to her reduced energy and fatigue.

Moreover, the ALJ's decision regarding Candice's sitting capacity is supported by substantial evidence. The bottom line is that Candice bore the burden of establishing that she is restricted in her ability to sit, but she failed to introduce such evidence. *Winkelman v. Saul*, 835 F. App'x 889, 892 (7th Cir. 2021). Candice does not point to any evidence supporting a conclusion that her reduced energy and fatigue specifically limited her ability to sit which the ALJ failed to consider. To begin, Candice's self-completed Function Report does not claim any limitations regarding sitting due to her conditions. (R. 249). And no physician, not even Dr. Wang, opined that Candice was unable to sit for six hours in an eight-hour workday Thus, substantial evidence supports the ALJ's decision not to add a sitting limitation to Candice's RFC based on her reduced energy and fatigue. *Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021) (finding the fact that no doctor offered any opinion setting sitting limits greater than those set by the ALJ a "fundamental problem").

The ALJ also restricted Candice to never balancing or climbing ladders, ropes or scaffolds and limited her to working in non-hazardous environments. (R. 21). The ALJ explained that he "considered the claimant's testimony [that her physician advised her against] riding a bike by herself or driving for more than an hour, as well as the testimony from the claimant's husband

regarding her quick decline in awareness during a crisis in finding that she could never balance or climb ladder, ropes, or scaffolds, and that she was limited to working in non-hazardous environments." *Id*. at 21, 54-56. Candice argues that the ALJ erred in failing to explain why her "decline in awareness" did not limit her ability to concentrate on work tasks despite affecting her ability to climb and work in a hazardous environment. The Court disagrees that the ALJ erred in this regard. As the ALJ noted, Candice described "three to four Addison's crises since 2007 and stated that two of the crises were in 2018." (R. 20, 21, 39, 44-46). Thus, the record reflects that Candice experienced—at most—two Addison crises, during the relevant four-year period. The ALJ further noted Candice's husband's testimony that during an Addison's crisis Candice experiences a "quick decline" in her awareness and ability to communicate and requires an emergency injection. *Id*. at 20, 56. The ALJ reasonably found that even a single instance of a sudden lack of awareness limited Candice's ability to climb or work in a hazardous environment. But Candice fails to explain why two Addison crises during the relevant four-year period affected her ability to sustain concentration on work tasks. Nor does Candice point to any evidence indicating that such infrequent Addison crises warranted a concentration limitation in the RFC. Given these failures, the ALJ justifiably concluded that Candice's extremely infrequent Addison crises did not warrant a limitation in the RFC related to her concentration.

## D.  Subjective Symptoms

Finally, Candice argues that the ALJ improperly discounted her subjective symptom allegations. "An ALJ's findings concerning the intensity, persistence, and limiting effect of claimant's symptoms must be explained sufficiently and supported by substantial evidence." *Ray*, 2021 WL 2710377, at *4. In evaluating a claimant's subjective symptoms, "an ALJ may consider several factors, including objective medical evidence and any inconsistencies between the allegations and the record." *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020). The Court will not

reverse an ALJ's subjective symptom conclusions unless they are "patently wrong, meaning they lack any explanation or support." *Anders v. Saul*, , 2021 WL 2396236, at *4 (7th Cir. 2021) (internal quotes omitted); *Ray*, 2021 WL 2710377, at *4 ("Patently wrong is a high threshold.").

The ALJ found Candice's statements about her symptoms to be "not entirely consistent with the medical evidence and other evidence in the record." (R. 20). Candice first claims this statement shows that the ALJ applied a more exacting standard than the applicable preponderance of the evidence standard to her testimony that she needed to nap. The Seventh Circuit has again recently rejected Candice's argument that the ALJ applied the wrong standard by using the language "are not entirely consistent," explaining that this language is simply "a polite way to say the weight of the evidence did not support all of her claims." *Gedatus*, 994 F.3d at 900. The phrase "not entirely consistent" is harmless if the ALJ gives "legitimate reasons for discrediting the claimant's testimony." *Lacher v. Saul*, 830 F. App'x 476, 478 (7th Cir. 2020).

Here, the ALJ provided adequate reasons for partially discounting Candice's allegations, including that the medical record did not corroborate the severity of her subjective symptom statements. As discussed above, the record demonstrates that the ALJ explicitly considered Candice's allegation of reduced energy and fatigue and accommodated her lifting and carrying difficulties by limiting her to light work. (R. 21). Candice also testified that she regularly naps two hours in the morning and two hours in the afternoon, but she fails to corroborate her claimed need to nap four hours a day with objective evidence. (R. 49). The ALJ was not required to credit Candice's alleged four-hour need to nap where nothing other than her testimony supported this requirement. *Green v. Saul*, 781 F. App'x 522, 528 (7th Cir. 2019) ("The RFC does not mention that [claimant] naps for two hours every day, but this requirement is not supported by evidence other than her testimony, which the ALJ did not credit."). "To the extent [Candice] faults the ALJ

for failing to specifically say whether [he] found [Candice's] nap-related statements credible, the ALJ was not required to assess the credibility of her statements on a symptom-by-symptom basis." *Moore v. Colvin*, 2016 WL 6995561, at *6 (N.D. Ill. Nov. 30, 2016) (citing *Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012)) ("an ALJ's credibility findings need not specify which statement were not credible," including his "assertion that he needed to lie down several times per day.").

In any event, the ALJ considered the objective evidence and adequately explained why he did not credit further fatigue-related restrictions: (1) the "treatment records suggest that her condition was generally stable and asymptomatic prior the alleged onset date;" (2) she worked for a year after her 2005 Addison's diagnosis despite Dr. Wang's opinion that she had disabling limitations since her diagnosis; and (3) the "record does not show worsening symptoms or deterioration of her condition around the alleged onset date and during the period at issue." (R. 20, 22). Notably, no physician opined that Candice required two daily two-hour naps. Dr. Mendonca expressly considered Candice's fatigue symptoms and concluded that she was able to perform medium work. *Id*. at 77-78. And although Dr. Wang opined that Candice's symptoms related to her Addison's disease prevent her from consistently working, Dr. Wang did not mention a daily napping limitation. On this record, substantial evidence supports the ALJ's failure to credit Candice's testimony that she regularly needs to nap twice a day for four hours. *Imse v. Berryhill*, 752 F. App'x 358, 360-62 (7th Cir. 2018) (ALJ properly disregarded claimant's testimony of needing to lie down four hours twice a week and nap 90 minutes three times a week where "no physician, treating or otherwise, has ever indicated that there was a medical reason why she would need to lay down/nap as frequently as alleged during the day.").

The ALJ also noted that Candice reported symptoms of diarrhea and constipation. (R. 20, 21, 39, 43, 45, 244). The ALJ found, however, that "the record does not show ongoing or

consistent related complaints to treating sources during the relevant period." (R. 21). In support, the ALJ noted that Candice sought treatment for diarrhea and constipation at a gastroenterology clinic in September 2010. *Id*. at 21, 486-490. Dr. George Stathopoulos noted Candice's alternating constipation and diarrhea was likely due to irritable bowel syndrome and might also be related to decreased sphincter tone and Candice's symptoms flaring since her tapering with Elavil. *Id*. at 490. Among other things, Dr. Stathopoulos recommended that she consider resuming Elavil. *Id*. As the ALJ noted, Dr. Stathopoulos did not see Candice again for more than a year, returning just prior to the end of the relevant period in December 2011 and questioning whether she could be gluten intolerant. *Id*. at 21, 493. Dr. Stathopoulos again suspected that Candice's symptoms of erratic bowel movements were due to irritable bowel syndrome. *Id*. at 493. The ALJ correctly noted that after an extensive evaluation, including an upper endoscopy, flexible sigmoidoscopy, biopsies, and a CT scan which were all essentially normal, Candice reported on February 27, 2012 having had no diarrhea for more than a month. *Id*. at 21, 505-506. The ALJ reasonably concluded, based on the above evidence, that Candice failed to show that she has diarrhea and constipation-related limitations during the relevant period.

Candice does not dispute that there were minimal complaints of diarrhea and constipation to her treating physicians during the period at issue. Nor does she point to medical records concerning treatment for diarrhea and constipation during the relevant period that the ALJ failed to consider. Rather, Candice argues that the ALJ improperly discounted her testimony about the limiting effects of her symptoms of diarrhea and constipation without addressing why she did not seek consistent treatment. ALJs are permitted to consider infrequent treatment in assessing the credibility of a claimant's subjective allegations. *Glenn H. v. Saul*, 2019 WL 6112684, at *6 (N.D. Ill. Nov. 18, 2019). But "an ALJ 'must not draw any inferences about an individual's symptoms

and their functional effects from a failure to seek or purse regular medical treatment without first considering any explanations that the individual my provide.'" *Roddy*, 705 F.3d at 638 (quoting SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996)).

Despite arguing that the "ALJ was required and failed to discuss[] the reasons why [she] did not seek consistent treatment for her diarrhea and constipation," Candice does not offer any alternative explanation for her minimal treatment for these symptoms during the relevant period that the ALJ failed to consider. Doc. 13 at 14. Additionally, at the hearing, the ALJ gave Candice an opportunity to explain her minimal treatment, and she did not provide an explanation for her failure to seek further medical treatment. The ALJ stated that he did not "see what in the record suggests the severity, the duration, and the onset of" Candice's diarrhea and constipation symptoms. (R. 40). The ALJ then described the lack of complaints in the medical record during the period at issue: "I note in 2012, no diarrhea since the tests. Then, there was some increased symptoms after September 2014. Exhibit 7F, which pretty much ends the time of the evidence that is relevant to a disability insurance benefits application. There are mostly general medicine and OB/gyn visits, and they have no mention of diarrhea or constipation." *Id*. Given this record, the ALJ was justified in concluding that Candice's infrequent complaints and treatment for diarrhea and constipation during the relevant period undercut the credibility of her description of the limiting effects of her symptoms. *Vivian T. for Estate of Robert T. v. Saul*, 2021 WL 2529611, at *5 (N.D. Ill. June 21, 2021) (the ALJ "appropriately discounted Plaintiff's complaints in part because of his lack of attempts to get treatment *during the relevant time period*" where "the ALJ gave Plaintiff an opportunity to explain his lack of treatment, and Plaintiff did not testify that he was prevented from seeking needed care.").

## <u>CONCLUSION</u>

For these reasons, Candice's request for reversal and remand [13] is denied, the Commissioner's Motion for Summary Judgment [20] is granted, and the ALJ's decision is affirmed.

**SO ORDERED.**

Dated:  July 28, 2021

_____
Sunil R. Harjani
United States Magistrate Judge